**STRETAR MASONRY COMPANY, INC., Respondent,**

and

**Wright County and Morrison County, Intervenors, Relators,**

v.

**COMMISSIONER OF REVENUE, Respondent.**

No. C4–93–1278.

Supreme Court of Minnesota.

June 30, 1994.

Eric J. Magnuson, J. Dennis O'Brien, Robin M. Maher, Rider, Bennett, Egan & Arundel, Minneapolis, for relator.

Thomas K. Overton, Asst. Atty. Gen., Tax Litigation Div., St. Paul, for respondent.

## OPINION

COYNE, Justice.

We review a decision of the tax court affirming the Commissioner of Revenue's assessment of use tax against Stretar Masonry Company, Inc., with respect to materials incorporated into government buildings in the counties of Morrison and Wright. We reverse.

In the latter half of the 1980's the Morrison County Board of Commissioners decided that the county needed a new government center to house its law enforcement, social services, and administrative offices. At about the same time, state corrections authorities directed Wright County to renovate and expand its jail. The Wright County Commissioners concluded that the county courthouse and its social services offices should be upgraded as well.

Both counties engaged Construction Analysis and Management, Inc. (CAM), to provide construction management services, from the planning stage through the completion of construction. During the planning stage CAM advised each county that the materials for the construction project would not be subject to sales tax, Minn.Stat. § 297A.25, subd. 11 (1988), if the county complied with the agency rule promulgated by the Department of Revenue. Quite naturally, both counties opted for structuring their respective construction projects in a way which would meet the requirements of Minn.R. 8130.1200 (1993) and relieve the counties of the cost of the sales tax on the construction materials.

CAM provided "Special Instructions to Bidders" for each of the projects, informing bidders that the county was exempt from

sales tax on materials purchased for the project and owned by the county and notifying bidders that in order to accommodate use of the tax exempt status the materials bid must be stated separately from the installation bid.

CAM analyzed the bids and advised each county which bidders CAM had identified as the lowest qualified bidder in each contract category. Stretar was awarded the masonry materials contract and the masonry installation contract for both the Morrison and Wright county projects. The materials contract and the installation contract were separate contracts, but both contracts between Stretar and Morrison County bore the same date of execution, as did the contracts with Wright County.

Each material contract included a provision identifying the county as a political subdivision of the State of Minnesota exempt from payment of Minnesota sales tax and appointing Stretar and its subcontractors as the county's purchasing agent:

> The trade contractor (and subcontractors) is hereby appointed by the owner as its purchasing agent. The trade contractor (and subcontractors) shall not pay state sales tax on materials and equipment which are affixed and made part of the real estate which are purchased for the project and become the property of the owner. Title to all materials and supplies purchased pursuant to any appointment shall immediately vest in the owner at the point of delivery. The risk of loss with respect to such materials and supplies is that of the owner. The owner and not the purchasing agent shall have responsibility of all defective materials and supplies. The trade contractor/purchasing agent, however, shall have the responsibility to order materials and supplies in accordance with contract specifications.

This provision tracks almost verbatim the requirements for department recognition of the agency relationship set out at Minn.R. 8130.1200, subp. 3(D):

> D. An exempt entity, in addition to contracting with a contractor for the erection of a building or the alteration or repair of real estate, may appoint and designate the contractor as purchasing agent for such

exempt entity in connection with the construction contract. In such situations the Department will recognize the agency relationship asserted only if the written contract clearly sets forth:

> (1) that such appointment has been made;

> (2) that title to all materials and supplies purchased pursuant to such appointment shall immediately vest in the owner or principal at point of delivery;

> (3) that the risk of loss with respect to such materials and supplies is that of the owner or principal; and

> (4) that the owner or principal, and not the agent, shall have responsibility for all defective materials and supplies, including those incorporated into realty purchased in such manner.

> In the event that the contract in question does not specify as to risk of loss, other competent evidence, such as insurance coverage, will suffice.

Nevertheless, the Commissioner of Revenue declared that the materials which Stretar purchased pursuant to its material contracts with Wright and Morrison Counties were construction materials purchased by a contractor as part of a lump sum or guaranteed maximum price contract covering both labor and materials for use in the construction of a building and assessed use tax against Stretar pursuant to Minn.Stat. § 297A.25, subd. 11.

In apparent, if unstated, agreement with the revenue examiner who characterized the transaction as a "sham," the tax court adopted the Commissioner's interpretation of the tax court opinion in *Bemidji Community Hospital v. Commissioner of Revenue*, Dkt. No. 3284, 1982 WL 1492 (Minn.Tax Ct. June 16, 1982) and the subsequent amendment of Minn.Stat. § 297A.25, subd. 11 (1983 Minn. Laws ch. 327, § 6). It seems to us, however, that the Commissioner has misperceived the purport of *Bemidji* and misconstrued the intended effect of the amendment.

Prior to inviting bids for the construction of a new hospital, the Board of Directors of Bemidji Community Hospital appointed the various prime contractors with whom it

would contract for the construction as the hospital's purchasing agent for the purchase of building materials, equipment and supplies necessary for completion of the agent's construction contract. The several contractors then entered a bid for one stipulated sum covering labor and materials for that category for which the bid was entered. The hospital entered into a single contract for one stipulated sum covering all labor and materials included within performance of that contractor's contract. Included in the contract were instructions and an agreement with purchasing agents which tracked the language of Tax S & U 112(c)(3) [the predecessor of Minn.Rule 8130.1200, subp. 3(D) ], except that the agreement did not impose responsibility for defective materials on the hospital. The contract provided that the term "work" included all labor and materials to be incorporated in the construction and stated one lump sum contract price without any breakdown separating materials and labor.

That the bids were for a single lump sum which included both labor and materials troubled the tax court, but the court believed that the Bemidji Hospital's good faith effort to comply with the regulation should not be nullified by a technicality—namely, that the contract did not impose on the hospital full responsibility for defective materials.

In *Bemidji* the tax court pointed out that there had been a number of contested cases involving similar situations and went on to suggest that the question could best be settled by legislation or by more explicit regulations. The tax judge lamented that the statutory exemption depended on whether the exempt entity or its contractor purchased the building materials and suggested that the statute should be clarified to treat all tax exempt entities alike, without reference to the kinds of actions or paperwork they resorted to. He also commented that under the statute the regulation could have been drafted to require materials to be bid separately from labor.

In conclusion, in *Bemidji* the tax court distinguished the application of the principle that a court can disregard form and consider the substance where it is obvious that there has been an attempt to avoid a legal tax from the situation before it where the attempt was only to obtain a legitimate exemption—a good faith effort that should not be thwarted by a technicality.

Although the Commissioner would put another face on *Bemidji,* the tenor of the opinion is more criticism of the repeated litigation of the application of the agency rule and the Commissioner's insistence on adherence to the technical requirements of the regulation than dissatisfaction with the statutory exemption.

As to the legislature's response to the invitation to address the problem, it is clear from a comparison of the amendment as originally proposed with the bill enacted in 1983 that the legislature did not at that time intend to deprive tax exempt entities of the opportunity to utilize their exemption from sales tax on building materials.[1] That amendment as originally proposed in 1983 expressly declared taxable all sales of tangible personal property to either a tax exempt entity or its contractor or subcontractor for use in the construction or repair of a building. The amendment was, however, itself at least twice amended so that the bill adopted provided that the exception from exemption should apply only to "building, construction or reconstruction materials purchased by a contractor or a subcontractor as a part of a lump-sum contract or similar type of contract with a guaranteed maximum price covering both labor and materials for use in the construction, alteration or repair of a building or facility."

Basically, then, the amendment the legislature ultimately adopted conformed with the tax court's suggested resolution of the question. After the adoption of the 1983 amendment the agency rule remained intact and the regulations were unchanged. In order to preserve the sales tax exemption, however, by appointing a construction contractor its purchasing agent, the tax exempt entity had to require that the bids on materials and

1. Effective May 31, 1992, the legislature abolished the sales tax exemption of tax exempt enti-

ties for any purchase of building materials. 1992 Minn.Laws ch. 511, art. 8, §§ 15 and 39.

labor be stated separately and that materials and labor be contracted for separately.

At this juncture, of course, it is apparent that the counties would have been well-advised to consult their lawyers rather than to rely on the construction manager to structure the transactions in a manner which would preserve the counties' exemption from sales tax on the building materials. The transactions might have been more artfully structured so that the contract for materials was more obviously distanced from the installation contract—perhaps by casting the former as an agency contract rather than a materials contract and providing that the county pay the supplier directly and compensate the contractor for its services as purchasing agent. Nevertheless, we are of the opinion that, even though the contracts must be characterized as "lump-sum" contracts and even though both were executed on the same day, as a matter of law, the two separate contracts cannot be considered to be a single unified construction contract for the sale and installation of building materials because there is no evidence that that was the intent of the parties. Minn.R. 8130.1200, subp. 4(B). To the contrary, the evidence is that the parties intended from the outset to keep the cost of materials separate from the cost of installation.

Moreover, as late as December 1990 the Department of Revenue made available "Sales Tax Fact Sheet 128," which provided these instructions for construction contracts with exempt organizations:

> Contractors who do work for exempt organizations such as * * * local government agencies normally must pay sales tax on all materials used on the construction contract, the same as with any other construction contract. The organizations' exempt status may not be used as a means of obtaining exemption for materials used by contractors under a lump-sum contract covering both labor and materials for the construction, alteration or repair of a building or facility.
>
> The only time a contractor can purchase materials exempt from sales tax * * * is when the entity authorizes the contractor or subcontractor as its purchasing agent.

> An exempt entity may designate a contractor as its purchasing agent only when:
>
> 1. The organization initially advertises for separate bids for materials and labor,
>
> 2. The accepted bids are issued on separate contracts, and
>
> 3. Obtaining one contract is not contingent on obtaining both.
>
> If all of these conditions are met and the contractor is awarded both the contract for materials and the contract for labor, or a contract for labor only, the exempt entity may designate the contractor as purchasing agent for materials, provided the written contract clearly shows that:
>
> 1. the appointment has been made;
>
> 2. the exempt organization takes title to all materials and supplies at point of delivery;
>
> 3. the risk of loss for all materials and supplies is that of the exempt organization; and that
>
> 4. the exempt organization, not the agent, has responsibility for all defective materials and supplies including those incorporated into realty.

Here the instructions directed bidders to state their bids for materials separately from bids for installation and the accepted bids were issued on separate contracts. Although there are some practical considerations which indicate the likelihood that construction will proceed more efficiently if the installer is appointed the purchasing agent, the bidding instructions contained no suggestion that obtaining one of the contracts was contingent on obtaining both. Neither did Stretar's bids on materials and labor make one contingent on the other. Nor did either county condition acceptance of one bid on acceptance of both.

Thus, we hold that the conditions were met and that the contract for materials meets the further requirements listed in Fact Sheet 128. Accordingly, we hold that the sales of building materials purchased by Stretar Masonry Company, Inc., as purchasing agent for Morrison County and for Wright County, which materials were used in the construction of government buildings in the said

counties, were exempt from taxation. Minn. Stat. § 297A.25, subd. 11.

Reversed.